UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHAD PAUL TRAHAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10145** |
| **LT. SWARTZ, ET AL.** | **SECTION: "A"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Chad Paul Trahan, a state pretrial detainee, filed this federal civil action pursuant to 42 U.S.C. § 1983. He sued Lt. Swartz, Richard Neal, Deputy Tommy Rodgers, Julius Martin, Sheriff Jerry J. Larpenter, and Terrebonne Parish President Gordy Dove. Plaintiff claims that he was exposed to black mold and dust at the Terrebonne Parish Criminal Justice Complex ("TPCJC"), received an inadequate response to his administrative grievance concerning that exposure, and was denied adequate medical care for his resulting injury.

The Court held a Spears hearing in this case on September 19, 2019. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

In his complaint and Spears hearing testimony, plaintiff made the following allegations: On February 19, 2019, plaintiff was transported from his housing unit at the TPCJC to a different section of the facility in order to meet with his parole officer. While walking through an area of the facility undergoing a renovation supervised by Deputy Tommy Rodgers and Julius Martin,

plaintiff was exposed to airborne black mold and dust from the construction. When he later filed an administrative grievance regarding the exposure, Lt. Swartz responded sarcastically, telling plaintiff that he must help keep the jail clean.

Plaintiff began experiencing eye problems which he attributed to the exposure. When he sought medical assistance, Dr. Richard Haydel, the jail doctor, made plaintiff an appointment with an ophthalmologist; however, he was not transported to that appointment. At the Spears hearing, plaintiff testified that he was eventually seen by Dr. Bourg, who is an optometrist, and an ophthalmologist at the Chabert Medical Center. Plaintiff stated that both Dr. Bourg and the ophthalmologist told him that nothing could be done because he was "ill" and experiencing "extreme photophobia" from an eye infection.

The Court obtained plaintiff's medical records from the TPCJC. Those records have been filed into this federal record,[1] and copies were provided to plaintiff for his use in this proceeding.

## I.  Screening Standards

Plaintiff filed this federal civil action *in forma pauperis*.[2] Concerning such actions, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
>     (i)    is frivolous or malicious;
>     (ii)    fails to state a claim on which relief may be granted; or
>     (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

---

[1] Rec. Docs. 18 and 19.
[2] Rec. Docs. 4 and 5.

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[3] Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

---

[3] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

## II. Plaintiff's Claims

Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

Broadly construing plaintiff's complaint,[4] and fully considering his Spears hearing testimony and medical records, the undersigned finds that, for the following reasons, the complaint should be dismissed as frivolous and/or failing to state a claim upon which relief may be granted.

### A. Claims Against Deputy Tommy Rodgers and Julius Martin

Plaintiff first claims that his rights were violated when he was exposed to airborne black mold and dust resulting from renovations being done at the TPCJC. With respect to that claim, he sued Deputy Tommy Rodgers and Julius Martin, whom he identifies as the jail maintenance officers supervising the construction.

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and

---

[4] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

federal courts are therefore loath to intervene when detainees complain of trivial inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 F. App'x 369, 371 (5th Cir. 2008); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015). For the following reasons, it is apparent that any exposure of plaintiff to black mold and dust was nothing more than a *de minimis* inconvenience which did not constitute "punishment" or otherwise rise to the level of a constitutional violation.

For example, "the jurisprudence has repeatedly held that the mere fact that mold is present in a jail does not render an inmate's confinement unconstitutional." Heaton v. Normand, Civ. Action No. 17-405, 2017 WL 3268341, at *4 (E.D. La. June 22, 2017), adopted, 2017 WL 3252813 (E.D. La. July 31, 2017). See also Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015) ("[T]he mere fact that fungus, mold, mildew, and rust are present [in a jail] does not warrant relief."); Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (holding that allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (finding that plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were nothing more than "a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Case 2:19-cv-10145-JCZ Document 20 Filed 10/15/19 Page 6 of 15

"Similarly, the presence of dust does not render an inmate's confinement unconstitutional." Heaton, 2017 WL 3268341, at *5. See also Jeanpierre v. Custodian, Civ. Action No. 10-4393, 2011 WL 1315113, at *3 (E.D. La. Jan. 10, 2011), adopted, 2011 WL 976507 (E.D. La. Mar. 18, 2011); McAllister v. Strain, No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); Cummings v. Gusman, Civil Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009).

Additionally, the United States Supreme Court has noted "that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978); accord Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003) ("[T]he length of time spent in the offensive conditions should be taken into account."). In the instant case, plaintiff's purported exposure to black mold and dust apparently occurred only during his brief walk through the construction zone.[5]

In summary, while plaintiff's exposure to black mold and dust may well have been unpleasant, such unpleasantness simply does not rise to the level of a constitutional violation. Although a jail should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister, 2009 WL 5178316, at *3. The presence of black mold and dust falls far short of the types of conditions which have been considered so egregiously offensive as to violate constitutional minimum standards. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004)

---

[5] In any event, even if the Court has misunderstood plaintiff's allegations and he is in fact alleging more prolonged exposure to black mold and/or dust, the result is no different. As already explained, the presence of black mold and dust in a jail's living quarters simply does not rise to the level of a constitutional violation.

6

(confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).

Finally, to the extent that plaintiff is alleging that Rodgers and Martin should have minimized plaintiff's exposure to black mold and dust by halting the construction work as he walked through the area, their failure to do so amounts to nothing more than garden-variety negligence which is not actionable under federal law. As the United States Supreme Court has explained: "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.*" Baker v. McCollan, 443 U.S. 137, 146 (1979) (emphasis added).

### B.  Claim Against Lt. Swartz

Plaintiff next claims that Lt. Swartz did not respond appropriately to plaintiff's grievance concerning his exposure to black mold and dust. That claim fails because an inappropriate response to a grievance is not a sufficient basis for liability under § 1983. Simply put: inmates do not have a constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

### C.  Claim Against Richard Neal

Plaintiff also claims that he received inadequate medical care for his eye problem which he alleges resulted from his exposure to black mold and dust. With respect to that claim, plaintiff sued Richard Neal, the TPCJC medical administrator. Plaintiff contends that when he would

complain that he needed medical attention, Neal would simply respond that medical appointments had already been secured and that plaintiff must wait for those appointments.

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's federal constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). Here, even if the Court assumes for the purposes of this decision that plaintiff's eye problem constituted a "serious medical need,"[6] his claim still fails on the "deliberate indifference" prong of the analysis.

The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

---

[6] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). Here, that is clearly the case. Plaintiff's medical records document that he received continued care and evaluations for his eye problem, as follows:

- March 9, 2019: Plaintiff submitted a sick call request complaining that he had a spot on his eye and blurry vision. The jail medical staff noted that there was swelling, and plaintiff was placed on Claritin and erythromycin.

- March 15, 2019: Plaintiff submitted a sick call request complaining of worsening vision and headaches. The jail medical staff noted that he had already been prescribed medications for his eye problem and that he could treat his headaches with over-the-counter medications in accordance with standing orders.

- March 18, 2019: Plaintiff submitted a sick call request complaining of blurry vision and headaches. The jail medical staff noted that there was still swelling in the corner of his eye despite the treatment with Claritin and erythromycin. Therefore, plaintiff was referred to the jail physician, Dr. Richard Haydel.

- March 21, 2019: Plaintiff was examined by Dr. Haydel, who ordered the jail medical staff to make plaintiff an appointment with an ophthalmologist. That same day, the jail medical staff contacted the Chabert Medical Center ("CMC") to request an appointment. CMC staff responded that plaintiff must first be seen by an optometrist, and he could then be re-referred to CMC for an ophthalmology appointment if necessary. Jail medical staff therefore scheduled an appointment with Dr. Bourg, an optometrist, for May 3, 2019, which was the first available appointment.

- April 12, 2019: Plaintiff submitted a sick call request complaining that his eye problem and headaches were getting worse. Jail medical staff responded that an appointment had already been scheduled and that he must wait for that appointment.

- May 3, 2019: Plaintiff was examined by Dr. Bourg, who determined that plaintiff was experiencing "extreme photophobia" and that a referral to an ophthalmologist was appropriate.

- May 5, 2019: Plaintiff submitted a sick call request complaining of blurry vision and headaches. Jail medical staff noted that he had already been referred to an eye doctor.

- May 7, 2019: Jail medical staff again contacted CMC to request an appointment with an ophthalmologist, noting that, as directed, plaintiff had been examined by an optometrist who concluded that an ophthalmology appointment was necessary. CMC staff scheduled an appointment for June 24, 2019.

The medical records reflect that plaintiff thereafter continued to complain of photophobia, blurry vision, and headaches. In response, he was prescribed ibuprofen and instructed that he must wait for his ophthalmology appointment. At the Spears hearing, plaintiff testified that he was taken to the ophthalmology appointment on June 24 as scheduled, and he was told by the ophthalmologist that nothing could be done to alleviate the eye problem.

The foregoing medical records rebut any allegation that plaintiff's requests for medical care for his eye problem were ignored. Rather, when he first requested medical care for his eye problem, he was quickly prescribed Claritin and erythromycin. When that failed to resolve his problem, he was then seen by Dr. Haydel less than two weeks after the first sick call request. When Dr. Haydel ordered that plaintiff be taken to CMC for evaluation by an ophthalmologist, the jail medical staff contacted CMC that same day for an appointment. When the CMC staff stated that

plaintiff must be first be examined by an optometrist, the jail medical staff promptly scheduled the first available appointment with Dr. Bourg. When Dr. Bourg examined plaintiff and recommended that he be seen by an ophthalmologist, the jail medical staff again quickly contacted CMC and secured an appointment. Plaintiff concedes that he was then taken to that ophthalmology appointment. Therefore, far from ignoring plaintiff, the jail medical staff responded to his medical requests promptly and appropriately.

Despite the foregoing, plaintiff nevertheless continues to protest that the care he received for his eye problem was inadequate. However, he does not specify in what respects he believes his medical care fell short of the mark, except to complain that Neal kept telling him that specialist appointments had been scheduled and that he must simply wait for the appointments.[7] Unfortunately, delays to see medical specialists for non-emergency care are a fact of life routinely experienced by both prisoners and nonprisoners alike. See, e.g., Dickerson v. Murray, Civ. Action No. 9:11cv78, 2012 WL 1314216, at *11 (E.D. Tex. Feb. 28, 2012) ("Even in the free world, there is a waiting time between a referral from a physician and a visit to a specialist, particularly in a managed care setting …."), adopted, 2102 WL 1314109 (E.D. Tex. Apr. 16, 2012). Further, the Fifth Circuit Court of Appeals has held that where, as here, a prisoner is "complain[ing] of the delay in providing access to a medical specialist rather than the denial of medical care," his complaint "effectively constitute[s] only a disagreement with his medical treatment … [and] fail[s] to state a facially plausible claim that any defendant was deliberately indifferent to a serious medical need." Wilson v. Grimes, 770 F. App'x 218, 219 (5th Cir. 2019); accord Cooper v. Calcasieu Correctional Center, Civ. Action No. 2:13-cv-2215, 2014 WL 4823695, at *3 (W.D. La.

---

[7] The Court is aware that plaintiff alleged that he missed one appointment with an ophthalmologist. However, the medical records show that there was in fact no missed appointment. Rather, as noted, the CMC staff stated that they would not schedule him an appointment with an ophthalmologist until he had first been evaluated by an optometrist.

11

Sept. 25, 2014) (holding that an inmate's "dissatisfaction with the timing of his appointment does not raise his claim to a constitutional dimension").

The foregoing conclusion is not changed by the fact that plaintiff's eye problem was not cured. Federal constitutional protections are not violated just because a prisoner's medical care was unsuccessful or because pain persisted despite that care. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Nor is the foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff's medical care was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need

that was met with deliberate indifference.  He did not.  Accordingly, his claim that he was denied adequate medical care is legally frivolous.

### D.  Claims Against Terrebonne Parish Sheriff Jerry J. Larpenter and Terrebonne Parish President Gordy Dove

Lastly, the Court notes that Terrebonne Parish Sheriff Jerry J. Larpenter and Terrebonne Parish President Gordy Dove were also named as defendants sued in this civil action.  When asked at the Spears hearing why he sued those individuals, plaintiff explained that he included them as defendants simply because they hold supervisory positions over the jail and its medical unit.

However, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  Further, "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions:  The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

In the instant case, the complaint includes no allegations whatsoever against either Larpenter or Dove, and plaintiff conceded at the Spears hearing that he had never even seen either of them.  Where, as here, a plaintiff merely lists an individual as a defendant but makes no factual allegations against him, no cognizable claim has been stated against that defendant.  See, e.g., Hall v. Peck, Civ. Action No. 16-13527, 2017 WL 745729, at *2 (E.D. La. Jan. 12, 2017), adopted, 2017 WL 788354 (E.D. La. Feb. 23, 2017); Reavis v. State of Louisiana, Civ. Action No. 16-1692, 2016 WL 3571440, at *3 (E.D. La. June 8, 2016), adopted, 2016 WL 3524139 (E.D. La. June 28, 2016); White v. Gusman, Civ. Action No. 14-2131, 2014 WL 6065617, at *2 (E.D. La. Nov. 12, 2014).

13

It is, of course, true that a supervisory official can be held liable in his individual capacity if he failed to properly supervise or train his subordinates. However, plaintiff made no such claim here, and, in any event, any such claim would necessarily fail in light of the foregoing findings that there was no underlying constitutional violation in this case. See, e.g., Whitley v. Hanna, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); Miner v. St. Tammany Parish Jail Medical Department, Civ. Action No. 15-3382, 2015 WL 10733081, at *10 (E.D. La. Nov. 10, 2015), adopted, 2016 WL 1615674 (E.D. La. Apr. 22, 2016); Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2014 WL 7139636, at *5 (E.D. La. Dec. 15, 2014); Wallack v. Jackson County, Civil Action No. 1:13cv103, 2014 WL 2154202, at *8 (S.D. Miss. May 22, 2014); Kennedy v. City of Shreveport, Civ. Action No. 07-1049, 2008 WL 2437043, at *6 (W.D. La. June 13, 2008).[8]

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or failing to state a claim upon which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

---

[8] Likewise, if plaintiff is attempting to assert official-capacity claims against Larpenter and Dove based on the foregoing allegations, those similarly fail due to the absence of any underlying constitutional violation. See, e.g., Royal v. Spragins, 575 F. App'x 300, 305 (5th Cir. 2014); Miner v. St. Tammany Parish Jail Medical Department, Civ. Action No. 15-3382, 2015 WL 10733081, at *10 (E.D. La. Nov. 10, 2015), adopted, 2016 WL 1615674 (E.D. La. Apr. 22, 2016); Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2014 WL 7139636, at *5 (E.D. La. Dec. 15, 2014).

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this ___15th__ day of October, 2019.


                                              */s/ Janis van Meerveld*
                                             **JANIS VAN MEERVELD**
                                             **UNITED STATES MAGISTRATE JUDGE**